# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br>                      *Appellant,*<br>v.<br>LISA M. KIRKLAND,<br>                      *Appellee.* | CIVIL NO. 6:09CV0002<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

This case is before the Court on an appeal by Educational Credit Management Corporation ("ECMC") of an October 10, 2008 order of the Bankruptcy Court for the Western District of Virginia denying its motion to alter or amend judgment. ECMC filed its notice of appeal on October 21, 2008. Although the notice was filed past the permissible ten-day period for an appeal, the Bankruptcy Court deemed the filing timely on the grounds that the one-day delay was the result of excusable neglect. ECMC's brief was filed in this Court on February 2, 2009. Appellee Lisa Kirkland failed to file a response brief within the fifteen days allotted by the Court's January 7, 2009 Briefing Notice. Because neither party contacted the Court to schedule oral argument within the deadlines set forth in the Briefing Notice, the appeal may be decided upon ECMC's brief and the record transmitted from the Bankruptcy Court. Because the Bankruptcy Court had subject matter jurisdiction over the adversary proceeding filed by Kirkland, and because the Bankruptcy Court did not grant a discharge of Kirkland's student loan debt without first making an undue hardship finding, the Bankruptcy Court's decision is AFFIRMED.

## I. BACKGROUND

Between 1989 and 1995, Kirkland took out eight different loans to pay for her college education. While Sallie Mae was the "lender" on each of the eight loans, three different entities – ECMC, United Student Aid Funds, Inc. ("USAF"), and the New Jersey Higher Education Assistance Authority ("NJHEAA") – guaranteed the loans. On February 23, 2001, after making payments towards the loans for several years, Kirkland initiated Chapter 13 Bankruptcy proceedings. Sallie Mae filed five proofs of claim, two of which were disallowed because they were duplicative, late-filed, or both. The allowed claims were: claim no. 6, in the amount of $8,126.72; claim no. 7, in the amount of $2,680.59; and claim no. 9, in the amount of $4,737.27. Although none of the proofs of claim included the name of the guarantors, ECMC was the guarantor on claim no. 9, which is the subject of the underlying appeal. Neither Sallie Mae nor ECMC filed an assignment of claim no. 9.

Under the terms of her Chapter 13 bankruptcy plan, Kirkland was obliged to pay $700.00 per month towards the loans for a period of sixty months. Neither Sallie Mae nor ECMC were mentioned in the plan by name. Kirkland intended to pay the claims of Sallie Mae and its assignees in full during the pendency of the Chapter 13 case, with the exception of interest that would accrue during that time. Because the Chapter 13 Trustee's Final Report listed the three claims in amounts that were less than the amounts of the proofs of claims filed by Sallie Mae, however, Kirkland made payments totaling only $38,500.00 – the equivalent of fifty-five payments of $700.00 each, or five payments less than provided by the plan. The Report erroneously listed claim no. 6 as allowed in the amount of $7,605.72, claim no. 7 as allowed in the amount of $2,277.59, and claim no. 9 as allowed in the amount of $3,536.68. In actuality, the

2

proofs of claims for all three were higher.[1] In addition, during the pendency of the plan or shortly thereafter, one or more of the guarantors mistakenly refunded a total of $2,562.68 to the Trustee, who in turn refunded it to Kirkland. On February 27, 2006, after Kirkland made the fifty-five monthly payments of $700.00, the order of discharge was entered on the Bankruptcy Court's docket and Kirkland's bankruptcy case was closed.

After Kirkland's bankruptcy case was closed, Sallie Mae began dunning Kirkland in the approximate amount of $5,000.00. Sallie Mae did not respond to Kirkland's attorney's initial request for documentation regarding the alleged debt. On December 5, 2006, Kirkland's attorney sent a second request to Sallie Mae for copies of the original loan agreement and the transactional history of the servicing of the loan from its inception. Sallie Mae responded by sending Kirkland copies of the original loan agreement and two pages of a document entitled "Declining Balance Payment History," which indicated that Kirkland owed Sallie Mae $4,854.54 as of October 18, 2000, $0.00 as of May 17, 2001, and $5,855.92 as of May 22, 2006. There was no documentation indicating what transactions occurred between May 17, 2001 and May 22, 2006 that caused the debt to increase from $0.00 to $5,855.92.

On June 25, 2007, Kirkland filed an adversary proceeding complaint in Bankruptcy Court seeking a determination that her student loan debt was discharged less and except any interest that accrued since the time of filing. In response, Sallie Mae claimed that Kirkland owed it a total of $8,135.19, including $184.40 in interest and $1,539.68 in costs. A trial was held on December 20, 2007. Because of some confusion concerning which guarantors were paid and when, the Bankruptcy Court asked counsel for ECMC to provide it with a more detailed account

---

[1] As explained above, claim no. 6 was actually for $8,126.72, claim no. 7 was actually for $2,680.59, and claim no. 9 was actually for $4,737.27. There was no indication in the record why the Trustee's Report indicated that claims 6, 7, and 9 were allowed and paid in amounts that were less than the amounts of each on the three proofs of claim. There were no objections filed to the three proofs of claims and no order was issued reducing the allowed amount of any of the proofs of claims.

3

of the history of payments to the guarantors. The following chart, which ECMC claims summarizes the information that was made available to the Bankruptcy Court, sets forth the amount of each guarantor's proof of claim, what each guarantor was scheduled to be paid under the Trustee Report, and what each guarantor was actually paid:

| Guarantor | Proof of claim | Scheduled payment | Actual payment |
|---|---|---|---|
| ECMC | $4,737.27 | $3,536.68 | $0.00 |
| USAF | $8,126.72 | $7,605.72 | $9,883.31 |
| NJHEAA | $2,680.59 | $2,277.59 | $3,536.68 |

As shown by the chart, the scheduled payments to each of the guarantors were less than each of the proofs of claim that were filed by Sallie Mae, and the actual payments to USAF and NJHEAA were greater than their respective proofs of claim. ECMC, on the other hand, was paid nothing. In its trial brief, ECMC explained that USAF received all of the funds that were meant for both USAF and NJHEAA, and NJHEAA received the funds intended for ECMC rather than the amount of its own claim. As a result of the mix-up, claims 6 and 7 were paid in full, but the two loans guaranteed by ECMC went unpaid.

In a Memorandum Opinion issued May 2, 2008, the Bankruptcy Court found that ECMC's claim was not discharged and that claim numbers 6, 7, and 9 were allowed in the full amount of $15,544.58 – not the $13,419.99 erroneously indicated in the Trustee's Final Report. The Court then reduced the $15,544.58 owed on the claims by the $13,369.99 that the Trustee's Report indicated was paid to Sallie Mae and its guarantors, finding that the principal amount owed was $2,174.59 as of the date the Trustee finished making payments under the plan but before the erroneous refund was made. Although convinced that the mistaken refund was caused

4

primarily by the failure of Sallie Mae to fulfill its duty to file an assignment of claim for claim numbers 7 and 9, the Bankruptcy Court held that Kirkland was not entitled to keep the money that was improperly refunded to her and added the amount of the improper refund to the total amount of principal owed, resulting in a total of $4,737.27 in principal ($2,174.59 + $2,562.68). The Court awarded interest in the amount of $184.40 because Sallie Mae originally asserted that was the amount that was owed and Kirkland did not object. Finally, the Court declined to award costs on the grounds that Sallie Mae failed to fulfill its duty to provide a supporting record on which the Court could accurately determine the amount of claims during the pendency of the bankruptcy.[2]

After the Bankruptcy Court issued its Memorandum Opinion and accompanying judgment, ECMC filed a motion to alter or amend judgment pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024. Rule 9023 applies Federal Rule of Civil Procedure 59 and Rule 9024 applies Federal Rule of Civil Procedure 60 in contested bankruptcy matters. Because the Bankruptcy Court concluded that ECMC's motion did not appear to be brought under Rule

---

[2] The Memorandum Opinion explained:

> At the hearing on this matter, the court asked counsel for [ECMC and Sallie Mae] to provide "a detailed account [of] how everything took place from the start to the finish; when they were paid; who paid them; and what [actually occurred]." This request clearly requires more than ledger account totals; it requires journal entries that include the name of each loan holder, the dates and amounts of each payment made by the Debtor on each account, the date and amount of interest accrued on each account, the date and amount of costs assessed against each account, as well as the balance after the posting of each transaction.
>
> It is not sufficient for [ECMC and Sallie Mae] to simply provide a summary sheet that mirrors the amount in the prayer for relief. But that is all [ECMC and Sallie Mae] filed with the Court, even after the specific request at the end of the hearing. That is all that [ECMC and Sallie Mae] ever provided to the Debtor.

May 2, 2008 Mem. Op., at 7.

The Bankruptcy Court also held that even if there were evidence concerning the accrual of statutory or other costs, it would deny ECMC's request for costs because any costs that accrued after the bankruptcy case closed resulted originally and primarily from the failure of Sallie Mae to effect its duty to file accurate assignments of
5

60,³ it considered ECMC's arguments only under Rule 59, which permits a court to grant a new trial on some or all of the issues after a non-jury trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."⁴

In a Memorandum Opinion issued October 10, 2008, the Bankruptcy Court denied ECMC's request to alter the amount of fixed principal, explaining that the $4,737.27 that was allowed was the exact amount of ECMC's proof of claim that was filed by Sallie Mae. The Court then rejected ECMC's request to alter the amount of interest that was awarded. While ECMC claimed that it was entitled to interest that accrued during bankruptcy and capitalized interest that had accrued since that time in addition to the Court's award of $184.40, the Court declined to alter the award on the grounds that the only evidence before it at trial indicated that only $184.40 in interest had accrued. The Court rejected ECMC's argument that no accounting of the interest could have been produced at trial because the amount of principal had not yet been determined, reasoning that ECMC could have at least explained and calculated the amount of principal and interest that it believed was due at the hearing or in its post-trial briefing before the Court issued its first Memorandum Opinion.⁵ The Bankruptcy Court again declined to award

---

claims. *Id.*

³ Rule 60 permits a court to correct a clerical mistake or mistake arising from oversight or omission under certain circumstances. Fed. R. Civ. P. 60(a).

⁴ The Rule also provides that, "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions or law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a).
There are four basic grounds upon which a Rule 59 motion may be granted: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) for the presentation of newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) to recognize an intervening change in controlling law. 11 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d, § 2810.1 (2d Ed. 1995).

⁵ The Bankruptcy Court explained:

> The fact that ECMC does not agree with the Court's subsequent determination of the amount of principle [sic] owed did not prevent it from explaining and calculating the amount of principal and interest that it believed was due, either during the hearing or in its post-trial brief. ECMC could have calculated the amounts due more easily than the Court. It knew the amount of principal that it believed was due. It knew the interest rate to be applied. Further it knew necessary information that the Court could not have known; it knew when the interest was capitalized, giving it the date on which any non-capitalized

6

ECMC costs. ECMC argued that Kirkland was statutorily obligated under 20 U.S.C. 1091a(b)(1) to pay it "reasonable collection costs," which are defined by regulation as costs that do "not exceed that which would be incurred by a *prudent person* under the circumstances prevailing at the time the decision was made to incur the costs." 34 C.F.R. § 682.410(a)(5)(iii) (emphasis added). The Bankruptcy Court rejected ECMC's argument not only because ECMC failed to raise the statutory basis for costs at trial, but also because ECMC failed to act as a prudent creditor on claim no. 9 by, among other things, failing to file an assignment of claim, failing to take steps to ensure that the Trustee knew that ECMC was the entity to which the payments were to be paid, and failing to monitor payments by the Trustee to ensure that it was being paid an amount each month that would meet its full claim by the plan's end. If Sallie Mae and ECMC had acted in a prudent manner during the pendency of Kirkland's bankruptcy case, according to the Court, then they would not have had to incur collection costs in the first place. Finally, the Bankruptcy Court rejected ECMC's argument that its judgment effectively granted Kirkland a partial discharge of the debt owed to ECMC without a finding of undue hardship. The Court explained that ECMC's argument "confused the concept of the allowance of a claim with the concept of the discharge of that claim." According to the Court, the purpose of the adversary proceeding was "not to determine the dischargeability of claim no. 9, but rather to determine the amount that [was] owed on account of that debt."

ECMC now appeals the Bankruptcy Court's decision, which it claims reduced Kirkland's student loan obligation by eliminating post-petition interest and collection costs. ECMC argues that the Bankruptcy Court lacked subject matter jurisdiction to render its decision and, in the

---

interest would begin to accrue. It was ECMC, and only ECMC, that could have provided the accounting. The Court requested such an accounting. ECMC declined to provide for it. It cannot now assert that the Court should have made the calculations for it.

October 10, 2008 Mem. Op., at 10-11.

alternative, impermissibly discharged non-dischargeable debt that was incurred after Kirkland's bankruptcy petition was filed.

## II. STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's "factual findings for clear error and its legal conclusions de novo." *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir. 2001). Whether a debtor meets the "undue hardship" standard for dischargeability is a mixed question of law and fact reviewed under a hybrid standard: the standard applied to questions of pure fact is applied to the factual portion of the inquiry, while the legal conclusion derived from those facts is examined de novo. *Frushour v. Educ. Credit Mgmt. Corp. (In re Frushour)*, 433 F.3d 393, 398 (4th Cir. 2005) (internal quotations and citations omitted).

## III. DISCUSSION

### A. SUBJECT MATTER JURISDICTION

The jurisdiction of the bankruptcy court is derived from the district court, which has "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007) (citations and internal quotations omitted).[6] Once jurisdiction is established, a bankruptcy court is authorized to enter appropriate judgments and orders in "core" proceedings and may only enter final orders in "noncore" proceedings if all of the parties so consent. *Id.* at 839, n. 3 (citing 28 U.S.C. § 157). "The determination that a claim is core or noncore is one that should not be reached, however, if subject matter jurisdiction does not exist." *Id.*[7]

---

[6] The United States' bankruptcy laws are codified in Title 11 of the United States Code. *See* 11 U.S.C. §§ 101-1330.

[7] While other circuits have equated "core" proceedings with the categories of "arising under" and "arising in" jurisdiction, *see, e.g., Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987), the Fourth Circuit has not.

8

ECMC argues that the Bankruptcy Court lacked subject matter jurisdiction to determine Kirkland's obligation for interest and collection costs because those obligations were derived from Promissory Notes[8] that exist independent of the bankruptcy proceeding and therefore do not arise under, arise in, or relate to cases under Title 11. While the issue was not raised at trial or in ECMC's motion to amend or alter judgment, subject matter jurisdiction may be questioned at any stage of litigation, including an appeal. *McCorkle v. First Pa. Banking & Trust Co.*, 459 F.2d 243, 244, n. 1 (4th Cir. 1972) (citations omitted).[9]

1. "RELATED TO" JURISDICTION

The Fourth Circuit has adopted the Third Circuit's tests for determining whether an action is "related to" a case under Title 11. The tests differ depending on whether an action accrues before or after the confirmation of a bankruptcy plan. In the pre-confirmation context, "'the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Valley Historic*, 486 F.3d at 836 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Therefore, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and

---

*Valley Historic*, 486 F.3d at 839. ECMC's brief sometimes conflates the issue of subject matter jurisdiction with the issue of core versus non-core jurisdiction. *See* App. Brief, at 13 (arguing that the Bankruptcy Court lacked non-core jurisdiction in support of its argument that Kirkland's interest and collection cost debt do not "relate to" a case under Title 11).

[8] The Notes were entered into in 1995 and state, in part:

> I promise to pay to the lender, or a subsequent holder of this Promissory Note, all sums disbursed (hereafter "loan" or "loans") under the terms of this Note, plus interest and other fees which may become due as provided in this Note. If I fail to make payments on this Note when due, I will also pay reasonable collection costs, including attorney's fees, court costs, and collection fees.

*See* App. Brief, at 11.

[9] In its May 2, 2008 and October 10, 2008 Memorandum Opinions, the Bankruptcy Court stated, without further discussion, that it had jurisdiction pursuant to 28 U.S.C. § 1334(a) & 157(a). The Court also stated that the matter was a "core proceeding" under 28 U.S.C. § 157(b)(2)(A).

[it] in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* (citations and internal quotations omitted). In the post-confirmation context, "the essential inquiry" is "'whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter.'" *Id.* (quoting *Bergstrom Binder v. Price Waterhouse & Co.* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 166 (3d Cir. 2004)). "'Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" *Id.* at 836-37 (quoting *Bergstrom*, 372 F.3d at 167).

In its brief, ECMC argues that Kirkland's action is not "related to" a case under Title 11 because there was no longer a bankruptcy plan to be confirmed or a bankruptcy estate in existence when Kirkland filed her adversary proceeding complaint on June 25, 2007. According to ECMC, the adversary proceeding could not have affected the administration of Kirkland's bankruptcy estate because there has been no estate in existence since 2006. This argument, however, presumes that the pre-confirmation test for jurisdiction applies. Because Kirkland filed her adversary proceeding complaint well after her bankruptcy plan was confirmed, the post-confirmation *Bergstrom* test, rather than the pre-confirmation *Pacor* test, is applicable. The Fourth Circuit first applied the post-confirmation test in *Valley Historic*, where it affirmed a district court's holding that its bankruptcy court lacked jurisdiction over an adversary proceeding brought by a debtor after it had paid all of its creditors under its bankruptcy plan. 486 F.3d 831. In the adversary proceeding, the debtor argued that its bank breached its loan agreement – the alleged breach was what initially caused the debtor to file for bankruptcy protection. In reaching its conclusion that the bankruptcy court lacked "related to" jurisdiction, the Fourth Circuit relied on the fact that there was no "conceivable bankruptcy administration purpose to be served by the Debtor's adversary proceeding" and that "the Debtor had paid all its creditors, including the

10

Bank before instituting the adversary proceeding." *Id.* at 837. Kirkland's case differs from *Valley Historic* because when Kirkland filed for the adversary proceeding, she had not actually paid all of her creditors, even though she thought she had made all of the required payments under her bankruptcy plan. Although the failure to pay ECMC for claim 9 was the result of errors in the Trustee's Report and the bankruptcy plan, the fact that Kirkland had not paid that claim when she brought the adversary proceeding means that there was a "conceivable bankruptcy administration purpose" to be served even though the bankruptcy case was officially closed. Kirkland made all of the payments that were required under the terms of the plan, with the intent of paying off in full the claims of Sallie Mae, ECMC, and the other assignees during the pendency of the Chapter 13 case. After Kirkland's bankruptcy case was closed and Sallie Mae began dunning her in upwards of $5,000, she filed the underlying adversary proceeding complaint. Were it not for the error in the Chapter 13 Trustee's Final Report and the failure of Sallie Mae and ECMC to catch the discrepancy in assignments of claims before the closure of Kirkland's bankruptcy case, Kirkland would have paid off her loans in full and would have never had to file the complaint. Because the adversary proceeding would not have been necessary but for the errors contained in the plan and the Trustee's Report, there is a strong enough nexus to uphold the Bankruptcy Court's jurisdiction over this matter.

2. "ARISING IN" JURISDICTION

ECMC also argues that the Bankruptcy Court lacked subject matter jurisdiction because Kirkland's case did not "arise in" Title 11. A proceeding or claim "arising in" Title 11 is one that is "not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Valley Historic*, 486 F.3d at 835 (citations and internal quotations omitted). Therefore, a "controversy arises in Title 11 when it would have no practical existence but for the bankruptcy." *Id.* (citations and internal quotations omitted). As explained

11

above, Kirkland's adversary proceeding in Bankruptcy Court arose out of errors in the administration of her bankruptcy plan and in the Trustee's Report. She filed her complaint after Sallie Mae repeatedly dunned her for debts that she thought were paid for in full by the payments she made under her bankruptcy plan. Although it is true that student loans are non-dischargeable absent a showing of undue hardship and pass unaffected through a bankruptcy estate for the purpose of a debtor's liability, *see Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 320-21 (4th Cir. 2001), that fact alone does not deprive the Bankruptcy Court of subject matter jurisdiction over Kirkland's case. Kirkland would have never had to bring the adversary proceeding against Sallie Mae and ECMC in Bankruptcy Court were it not for the problems that arose out of her closed Chapter 13 bankruptcy case. The post-petition interest and collection costs sought by ECMC in the Bankruptcy Court, for example, would not have even been at issue were it not for the maladministration of the bankruptcy plan and the initial bankruptcy proceeding. The controversy at issue between Kirkland and ECMC would have had no practical existence but for the bankruptcy. Kirkland's case was not only one "related to" a case under Title 11, but also one "arising in" Title 11. The Bankruptcy Court therefore had subject matter jurisdiction to rule on the issues before it.

## B. POST-PETITION INTEREST & COLLECTION COSTS

ECMC argues that even if the Bankruptcy Court had subject matter jurisdiction, it erred by effectively granting Kirkland a partial discharge of the post-petition interest associated with her student loan obligations. ECMC also contends that collection costs should have been awarded pursuant to a "formula" determined by federal regulations, and not based on the Bankruptcy Court's assessment of Kirkland's individual account activity.

### 1. POST-PETITION INTEREST

"Student loans are nondischargeable in bankruptcy unless the Debtor can prove excepting

12

the debt from discharge would impose an undue hardship." *Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296, 300 (4th Cir. 2002) (citing 11 U.S.C. §§ 523(a)(8), 1328(a)(2)). Post-petition interest on nondischargeable student loans is also nondischargeable. *Id.* (citations omitted). According to ECMC, the Bankruptcy Court erred by discharging post-petition interest on claim no. 9 without making an undue hardship finding. All of ECMC's arguments presume, however, that the Bankruptcy Court discharged the post-petition interest on claim no. 9. As the Bankruptcy Court itself explained, however, the purpose of the adversary proceeding was not to discharge any of Kirkland's debt but to determine the amount owed on account of that debt.[10] In making that determination, the Bankruptcy Court concluded, based on all the evidence before it, that the post-petition interest owed on claim no. 9 amounted to $184.40. The mere fact that the Bankruptcy Court awarded interest in an amount less than ECMC claims it requested does not mean that the Court discharged or partially discharged post-petition interest on claim no. 9. The Bankruptcy Court gave ECMC an opportunity after the trial on December 20, 2007 to provide it with additional information regarding the amount owed on claim no. 9, including post-petition interest. Because the Bankruptcy Court's factual determination that Kirkland owed $184.40 in post-petition interest in addition to principal was not clearly erroneous, and because the Bankruptcy Court did not need to make a finding of undue hardship before determining the interest that was owed, I affirm the Bankruptcy Court's decision regarding post-petition interest.

2. COLLECTION COSTS

Under 20 U.S.C. § 1091a(b)(1), a borrower who defaults on a student loan is "required to pay…reasonable collection costs." ECMC claims that the Bankruptcy Court lacked the

---

[10] In the October 10, 2008 Memorandum Opinion, the Bankruptcy Court stated in full: "The amount owed on account of claim no. 9 is non-dischargeable. The purpose of this adversary proceeding is not to determine the dischargeability of claim no. 9, but rather to determine the amount that is owed on account of that debt. The Court has done this in light of the evidence provided by ECMC. The Court has not held any part of the ECMC claim dischargeable."

13

discretion to decide what collection costs were "reasonable" because such costs are determined by federal regulations and should not be based on the Bankruptcy Court's assessment of Kirkland's specific account activity. "Reasonable collection costs" are defined by regulation as costs that do "not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur the costs." 34 C.F.R. § 682.410(a)(5)(iii) (2009). The guaranty agency bears the burden of proving that the collection costs it seeks are reasonable. *Id.*

The Bankruptcy Court was not required to accept ECMC's assessment of the collection costs associated with claim no. 9. ECMC bore the burden of proving that the $1,539.68 it sought in costs was a reasonable amount, and the Bankruptcy Court correctly concluded that zero collection costs were appropriate under the circumstances. While the language of 20 U.S.C. § 1091a(b)(1) "requires" a defaulting borrower of student loans to pay reasonable collection costs, it does not guarantee any specific monetary amount. It was thus well within the Bankruptcy Court's discretion to determine what costs were "reasonable" given the circumstances of Kirkland's case and the standard set forth in 34 C.F.R. § 682.410(a)(5)(iii).

As explained by the Bankruptcy Court, ECMC was not entitled to collection costs because a prudent guarantor acting under similar circumstances would have never incurred such costs in the first instance. A prudent guarantor would have: filed an assignment of claim no. 9; taken steps to ensure that the Chapter 13 Trustee knew that it was the entity to which the payments on claim no. 9 were to be paid; monitored the payments by the Trustee, at least once a year, to ensure that it was being paid an amount each month such that it would have been paid the full amount of its claim by the plan's end; and provided Kirkland with a simple accounting upon request, especially if the purpose of the request was to pay any amount actually owed. Had ECMC taken all or even some of these steps, then it very likely would not have incurred the

14

collection costs it now seeks. Because ECMC acted without prudence with respect to Kirkland's obligations, I affirm the Bankruptcy Court's ruling regarding collection costs.

## IV. CONCLUSION

Because Kirkland's adversary proceeding against ECMC and Sallie Mae arose in and related to a case under Title 11, the Bankruptcy Court had subject matter jurisdiction to rule on the issues before it. The decision of the Bankruptcy Court awarding $184.40 in interest and zero collection costs to ECMC is affirmed. The Clerk of Court is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

It is so ORDERED.

Entered this 10th day of March, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE